**RECORD NO. 15-2348**

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

**RICHARD A. PRESSL**
**and**
**THERESA M. PRESSL,**

*Appellants,*

**v.**

**APPALACHIAN POWER COMPANY,**

*Appellee.*

---

**OPENING BRIEF OF APPELLANTS**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA AT ROANOKE**

**James Frederick Watson, Esquire**
**(VSB No. 40322)**
**Pavlina B. Dirom, Esquire**
**(VSB No. 66573)**
**CASKIE & FROST, P.C.**
**2306 Atherholt Road**
**P. O. Box 6320**
**Lynchburg, Virginia 24505**
**(434) 846-2731 (Telephone)**
**(434) 845-1191 (Facsimile)**
**fwatson@caskiefrost.com**
**pdirom@caskiefrost.com**

**Counsel for Appellants**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2348__    Caption: __Richard A. Pressl, et al. v. Appalachian Power Company__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Richard A. Pressl, Teresa M. Pressl__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

08/05/2015 SCC                                    - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: __11/9/2015__

Counsel for: _Richard A. Pressl , Teresa Pressl_

## CERTIFICATE OF SERVICE
****************************

I certify that on _Nov 9, 2015_ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Matthew P. Pritts, Esquire
C. Carter Lee, Esquire
WOODS ROGERS PLC
10 South Jefferson Street, Suite 1400
P.O. Box 14125
Roanoke, Virginia 24038

_____                    _November 9, 2015_
      (signature)                                    (date)

## TABLE OF CONTENTS

Table of Contents ........................................................................................................ 2

Table of Authorities .................................................................................................. 3

Jurisdictional Statement .......................................................................................... 6

Statement of Issues Presented for Review ............................................................. 7

      I.  Whether the District Court erred in denying the Appellants' Motion to Remand and For Costs and Attorney's Fees where Appellants' cause of action and requested remedy are both governed by state law. ...................................................... 7

      II. Whether the District Court was without jurisdiction in granting the Appalachian Power Company's Motion to Dismiss.. ............................................................ 7

      III. Whether the District Court erred in Granting the Motion to Dismiss on Substantive Grounds…………………………………………………………………....7

Statement of the Case .............................................................................................. 7

Statement of Facts .................................................................................................... 9

Summary of the Argument ...................................................................................... 11

Argument ................................................................................................................ 16

Standard of Review…………………………………………………………………17

Conclusion. ............................................................................................................ 45

Statement of Regarding Oral Argument …………………………………….…….. 46

Certificate of Compliance ...................................................................................... 47

Certificate of Service …………………………………………………………….48

TABLE OF AUTHORITIES

**CASES**

Am. Std. Homes Corp. v. Reinecke, 245 Va. 113, 425 S.E.2d 515 (1993)……………………43

Caterpillar Inc. v. Williams, 482 U.S. 386 (1987)……………………………………………13, 18

Central Iowa Power Coop. v. Midwest Independent Transmission System Operations, Inc.,…..30
 561 F.3d 904 (8th Cir. 2009)

Chevron U.S.A, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, ………….22, 25
81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984).

City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156………………………………………..22
118 S. Ct. 523, 139 L.E. 2d 525 (1997).

Columbia Gas Transmission Corp. v. Drain, 191 F.3d 552 (4th Cir. 1999)……………………18

Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366 (4th Cir. 2001)……………...14, 15, 31

Columbia Gas Transmission, LLC v. Singh, 707 F. 3d 583 (6th Cir. 2013)……………………34

DiLaura v. Power Authority of New York, 786 F. Supp. 241 (W.D.N.Y. 1991)……….16, 25, 33

Dixon v. Coburg Dairy, Inc., 369 F.3d 811 (4th Cir. 2004)……………………………………..17

Dominion Pathology Labs., PC v. Anthem Health Plans of Va., Inc., 2015 U.S. Dist. LEXIS
8002 (E.D. Va. June 19, 2015)………………………………………………………………..23

Edwards v. City of Goldsboro, 178 F.3d 231 (4th Cir. 1999)…………………………………40

Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677………………………19, 22, 39
126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006).

Estate Const. Co. v. Miller & Smith Holding Co., 14 F.3d 213 (4th Cir. 1994)…………………40

Flying Pigs, LLC v. RRAJ Franchising, LLC, 757 F.3d 177 (4th Cir. 2014)……………19, 20, 36

Gibraltar, P.R., Inc. v. Otoki Group, Inc., 104 F.3d 616 (4th Cir. 1997)…………………………19

Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308……13,18, 19, 20, 22, 35
125 S. Ct. 2363, 162 L. Ed 257 (2005).

Gully v. First Nat'l Bank, 299 U.S. 109 (1936)………………………………………..……13, 19

Gunn v. Minton, 133 S. Ct. 1059, 185 L. Ed. 3d (2013)…………………….……....14, 18, 35, 39

Household Bank, F.S.B. v. Allen, 2001 U.S. Dist. LEXIS 8799, ……………………………32
(S.D. Miss. May 25, 2001).

Jeffrey Lake Dev. Cent. Neb. Pub. Power & Irrigation Dist.,……………………………...30
2011 U.S. Dist. LEXIS 152634 (D. Neb. Nov. 23, 2011)

McCarthy Holdings, LLC v. Burgher, 282 Va. 267, 716 S.E. 2d 461 (2011)…………………..44

Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804 ……………………………………19
106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986).

Moore v. Svehlak, 2013 U.S. Dist. LEXIS 97329 (D. Md. July 11, 2013)………………….....42

Mylan Labs., Inc. v. Matkari, 7 F.3d 1130 (4th Cir. 1993)………………………………………40

Neitzke v. Williams, 490 U.S. 319………………………………………………………………40
109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396 (4th Cir. 1998)……………………..21

Partington v. Am. Int'l Specialty Lines Ins. Co., 443 F. 3d 334 (4th Cir. 2006)…………….....17, 39

Shooting Point, L.L.C. v. Wescoat, 265 Va. 256, 576 S.E.2d 497 (2003)…………………………44

Tri-Dam v. Michael, 2014 U.S. Dist. LEXIS 42472 (E.D. Cal. March 5, 2014)……………25, 28

Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468……………………………………………18, 24
109 S. Ct. 12448, 103 L. Ed. 2d 488 (1989).

York v. Property & Cas. Ins. Co., 592 Fed. Appx. 148 (4th Cir. 2014)……………………...17, 24

**STATUTES**
15 U.S.C. §717u…………………………………………………………………………………34

16 U.S.C. §825p…………………………………………………………………………...15, 34

16 U.S.C. §814 …………………………………………………………………………………26

28 U.S.C. §1291………………………………………………………………………………….6

28 U.S.C. §1331…………………………………………………………………………………13

28 U.S.C. §1441……………………………………………………………………………..8, 16, 42

28 U.S.C. §1446……………………………………………………………………………8

28 U.S.C. §2201……………………………………………………………………………30

**OTHER AUTHORITIES**

Alternative Energy Associates, 66 FERC ¶62,101 (1994)…………………………………25

Appalachian Power Company, 112 FERC ¶61,026 (2005)………………………………….. 29

Appalachian Power Company, 129 FERC ¶62,201 (2009)………………………………...27

City of Holyoke Gas and Electric Dept., 115 FERC ¶62,295 (2006)……………………………24

FirstLight Hydro Generating Company, 142 FERC ¶62,256 (2013) ………………………23, 41

Public Utility District No. 1 of Chelan County, Washington, 15 FERC ¶ 62,168 (1981)…..25, 29

Union Electric Co., d/b/a AmerenUE, 90 FERC ¶61,249 (2000)……………………………28, 30

## OPENING BRIEF OF APPELLANTS

**To the Honorable Chief Circuit Judge and Circuit Judges of the United States Court of Appeal for the Fourth Circuit:**

Pursuant to Rules 3 and 28(a) of the Federal Rules of Appellate Procedure, the Appellants, Richard A. Pressl and Theresa M. Pressl, ("Pressls or Appellants"), plaintiffs in the trial court, hereby file their Opening Brief of Appellants for their appeal from the Final Order of the United States District Court for the Western District of Virginia, Roanoke Division, ("District Court") which was entered on October 6, 2015.

## JURISDICTIONAL STATEMENT

(A)    The Court of Appeals has subject matter jurisdiction in this case pursuant to 28 USC § 1291 as the Pressls have appealed from the final decision of the District Court disposing of all of the parties' claims.  Plaintiffs-Appellants filed their Notice of Appeal on November 2, 2015, within 30 days allowed under FRAP 4(a)(1).

(B)    Appellants aver that the District Court was without jurisdiction when it dismissed this case and should have remanded it to state court.  Diversity does not exist here because the parties are both citizens of the Commonwealth of Virginia and, as explained herein, Appellant's Complaint does not present a federal question to establish federal jurisdiction.

6

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.    Whether the District Court erred in denying the Appellants' Motion to Remand and For Costs and Attorney's Fees where Appellants' cause of action and requested remedy are both governed by state law.

II.    Whether the District Court was without jurisdiction in granting the Appalachian Power Company's ("APCO") Motion to Dismiss.

III.    Whether the District Court erred in granting the Motion to Dismiss on substantive grounds.

## STATEMENT OF THE CASE

On June 2, 2015, the Pressls filed a civil action against APCO in the Circuit Court for the County of Franklin, Virginia seeking declaratory judgment determining that the demands imposed by APCO were at odds with a flowage easement previously conveyed to APCO by the Pressls' predecessors in title, and that the flowage easement did not allow APCO to regulate the Pressls' certain uses of their property.  JA 17, 19, 29-31.  Specifically, the Pressls requested that the state court determine that, among other things, the flowage easement does not give the right to APCO to demand that the Pressls relinquish their property rights under the flowage easement; the flowage easement does not give APCO the right to require the Pressls to enter into a revocable license as a condition of accessing the

waters of Smith Mountain lake for recreational purposes; APCO's authority to regulate the Pressls' property below the 800 foot contour line is limited to the terms defined in the flowage easement; the flowage easement does not allow APCO to regulate the size and type of dock the Pressls may construct on their property; the flowage easement does not require the Pressls to plant vegetation, or allow APCO to regulate how the Pressls stabilize their shoreline; and the Pressls are authorized to use their property below the 800 foot contour line in any manner not inconsistent with the APCO's right to flood the Pressls' property pursuant to the flowage easement or impact APCO's ability to maintain and operate the Smith Mountain dam and power station.  JA 34-36.

APCO, on June 23, 2015, removed the case to the United States District Court for the Western District of Virginia alleging a right to remove based on 28 U.S.C. §1441 and §1446 and alleging federal question jurisdiction over this matter. JA 6.

On July 2, 2015, APCO filed a Motion to Dismiss, alleging, among other things, that the Pressls failed to exhaust their administrative remedies provided by the Federal Regulatory Commission ("FERC").  JA 89-90.  On July 10, 2015, the Pressls filed a Motion to Remand and For Costs and Attorney's Fees ("Motion to Remand") seeking to remand the case to state court based on lack of federal

jurisdiction and requesting that they be awarded costs and attorney's fees associated with the motion.  JA 165.

After a hearing with oral argument, the District Court granted APCO's Motion to Dismiss and denied the Pressls' Motion to Remand.  JA 500. The Pressls filed their Notice of Appeal on November 2, 2015.  JA 501.

## STATEMENT OF FACTS

On April 25, 1960, the Federal Power Commission, the Federal Energy Regulatory Commission's predecessor, issued a license to APCO, pursuant to which APCO was authorized to construct and operate a hydroelectric project known as the Smith Mountain Pumped Storage Project.  JA 260.  Under the terms of the license (Article 5), APCO was required to "acquire title in fee or the right to use in perpetuity all lands, other than lands of the United States, necessary and appropriate for the construction, maintenance, and operation of the project."  JA 322.  With respect to the Pressls' property, in 1960 APCO acquired a flowage easement from the Thompsons, the then owners of what is now the Pressls' property.  JA 42-44.   APCO specifically acquired an easement to:

 overflow and/or affect so much of said premises [below 800 feet contour line] as may be overflowed and/or affected, continuously or from time to time in any manner whatsoever, as the result of the construction, existence, operation and/or maintenance of the aforesaid dam and/or power station, the impounding of said river and tributaries and/or varying of the level of the so impounded waters by reason of

9

the operation of said power station, including any pumping as part of such operation.  JA 42.

The Thompsons also granted to Appalachian the right to:

enter upon said premises at any time and from time to time and, at Appalachian's discretion, to cut, burn and/or remove therefrom any and all buildings, structures, improvements, trees, bushes, driftwood and other objects and debris of any and every kind or description which are or may hereafter be located on the portion of said premises below the contour the elevation of which is 800 feet.  JA 43.

The Pressls' predecessor in title, the Thompsons, retained the right to:

possess and use said premises in any manner not inconsistent with the estate, rights and privileges herein granted to Appalachian, including (a) the right to cross said land to reach impounded waters for recreational purposes . . . .   JA 43.

The Pressls acquired 2.663 acres above 800 feet contour and 0.5 acres below 800 feet contour by deed dated June 20, 2012, from Bank of the James.  JA 37-39. The property lies in Lakeland Park, Gills Creek Magisterial District, Franklin County, Virginia.  The real estate was conveyed subject to all easements affecting said real estate.  JA 39.   Soon after the Pressls purchased their property, they began making plans to construct a dock to access the waters of Smith Mountain Lake. JA 7.  However, APCO informed the Pressls that it had the ability to control how they use the property below 800 foot contour level of their property, including the construction of a dock, and made numerous arbitrary demands on the Pressls insisting that they had to use and vegetate their property in particular ways.  JA 27. APCO also advised the Pressls that, as a condition of using their land below the

800 foot contour level, they had to execute an Occupancy and Use Permit

("Permit"). JA 31, 49-55. The terms of this permit state that it is a revocable

license which APCO may revoke for any act which violates a condition imposed

by APCO. JA 31, 50. The Permit is personal in nature and does not run with the

land, but would expand APCO's rights as to the Pressls' property beyond those

that exist in the flowage easement. JA 31. As a result, the Pressls filed a

declaratory judgment suit in the Circuit Court for the County of Franklin, Virginia,

seeking the state court to interpret the flowage easement and APCO's rights under

the flowage easement as it pertained to the demands imposed by APCO on the

Pressls. JA 17.


## SUMMARY OF THE ARGUMENT

The District Court erred in both of its rulings in this case. The District Court

erred in not remanding the case to the state court. And, not having federal question

jurisdiction, the District Court erred in granting APCO's Motion to Dismiss.

Additionally, the District Court erred in granting APCO's Motion to Dismiss on

the ground that the Pressls failed to exhaust their administrative remedies under

FERC. FERC has no jurisdiction over the Pressls or their property, no does it have

any property rights to the Pressls' property. Indeed, FERC has held on numerous

occasions that it did not determine the parties' property rights and thus going to

FERC for such determination would have been futile. Underscoring the error in its

reasoning, the District Court arrived at its 'failed to exhaust administrative remedies' decision only after it had determined, using and interpreting only state law, that APCO had sufficient property rights under the flowage easement to require the Pressls to obtain a permit to construct a dock. The District Court's primary justification for dismissal was thus based on the District Court's own interpretation of the flowage easement while applying the state property and contract law without interpreting any federal law or any terms or conditions of APCO's FERC license. Thus, not only did the District Court erred in granting the Motion to Dismiss, it is also evident from the District Court's own analysis that the District Court erred by not remanding the case to the state court.

The District Court did not have jurisdiction in this case. The property merely lying and being in the Project area is insufficient to create the right to regulate the property owned by others and is insufficient to confer federal question jurisdiction. Similarly, the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction. Neither APCO's license from FERC nor the Federal Power Act authorize federal courts to adjudicate or interpret the sufficiency of the private property rights required by licensees of FERC. The license simply regulates the conduct of APCO, the licensee. APCO's right to regulate is dependent on, and subject to, the flowage easement, which is solely a matter of state law.

12

The Court in its analysis of federal jurisdiction must look to Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  Under the well-pleaded complaint rule, the federal question must appear on the face of the complaint.  Id.  In this case, the Pressls stated a state law cause of action for interpretation of the flowage easement. The substantive law to be applied in interpretation of the flowage easement is Virginia substantive law.  The Pressls' requested a remedy based on the interpretation of the private property right is also prescribed by state law. Thus, no federal question appeared on the face of the Pressls' Complaint.  A claim arises under federal law for 28 U.S.C. §1331 purposes of a well-pleaded complaint either if the federal law creates the cause of action or if the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.

If the Court does not find a federal question on the face of a well-pleaded complaint, it may consider whether there is a basis for federal jurisdiction under a much narrower Grable alternative doctrine.  Pursuant to the Grable doctrine, state-law claims may "arise under" federal law if they "implicate significant federal issues."  Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).  A significant federal issue is implicated to warrant federal jurisdiction if all four prongs of Gunn are satisfied and present.  Gunn v. Minton, 133 S. Ct. 1059, 1064, 185 L. Ed. 3d 72 (2013).

This case does not implicate a significant federal issue as APCO cannot establish and has not established that all four prongs of <u>Gunn</u> analysis are satisfied. Federal jurisdiction over a state law claim will lie only if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial <u>and</u> (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. <u>Gunn v Minton</u>, 133 S. Ct. 1059, 1065, 185 L. Ed. 2d 72 (2013)(emphasis added).

In declaratory judgment cases, the Court is also allowed to consider and apply the so-called "coercive action" doctrine. In a declaratory judgment action, the federal right litigated may belong to the declaratory judgment defendant rather than the declaratory judgment plaintiff. <u>Columbia Gas Transmission Corp. v. Drain</u>, 237 F.3d 366, **9-10 (4th Cir. 2001). The question is whether the complaint alleges a claim arising under federal law that the declaratory defendant could affirmatively bring against the declaratory judgment plaintiff. And in this case, the District Court erroneously concluded that APCO could bring coercive suit arising under federal law. It is the Pressls' position however that APCO cannot establish any obligation on the part of the Pressls to follow or answer to FERC. Only APCO has to answer to FERC, and the Pressls only have to answer to APCO if APCO establishes that the flowage easement is a broad enough property right for APCO to have the right to regulate the size and type of dock the Pressls may build

or the vegetation they may plant.  The well-pleaded complaint rule operates no differently when the jurisdictional issue is whether a district court possess subject matter jurisdiction over a declaratory judgment action.  <u>Columbia Gas Transmission Corp. v. Drain</u>, 237 F.3d 366, **9-10 (4th Cir. 2001).   A plaintiff/defendant seeking to invoke federal jurisdiction in a declaratory judgment action must independently meet the federal jurisdiction requirements.   In determining whether a federal jurisdiction arises in the hypothetical "coercive suit", the court must determine what would be the suit's underlying cause of action.

Since it is the underlying property rights as to the Pressls and APCO which are in dispute, the reverse of the declaratory judgment must turn on resolution of private property rights, a matter of state law, not a matter of federal law.  Suit pursuant to 16 U.S.C. §825p by APCO to enforce its duties and responsibilities under the FPA is not the reverse of the Pressls' suit.  When 16 U.S.C. §825p provides for federal jurisdiction over suits to enforce any liability or duty created by the FPA or other regulation, it primarily speaks of the duties and liabilities of the licensees' such as APCO.  The FPA does not confer upon APCO the right to enter, use, or regulate private property without the consent of the owner.  If APCO has any "rights" to enforce it would be only APCO's rights under the flowage easement, which is a matter of state law.  APCO's hypothetical "coercive action"

cannot be basis of federal jurisdiction. The Pressls and/or APCO simply asserting and seeking interpretation of their state law property rights cannot bootstrap federal jurisdiction. FERC is not a party to the flowage easement and has no interest in, or control over, the Pressls' property. The flowage easement originated in Virginia, is affecting Virginia residents, and derives its force from the Virginia state law.

Nowhere does the Federal Power Act grant any authority to licensees to regulate private property. Indeed, "[t]he legislative history of the Federal Power Act clearly establishes that Congress was determined not to infringe the traditional jurisdiction of the States in the areas of property rights and tort liability." DiLaura v. Power Authority of New York, 786 F. Supp. 241 (W.D.N.Y. 1991). The concept of leaving property rights issues to the states has been preserved by the FPA and upheld in case law and by FERC. In this manner, APCO's hypothetical "coercive suit" also does not implicate a significant federal issue and thus fails to satisfy the four prong Gunn analysis for this case to remain in federal court.

Based on all of the foregoing, both of the District Court's rulings should be vacated with instructions to the District Court to remand the case to the state court. Further, because APCO lacked objectively reasonable basis for seeking removal, the Pressls should also be granted costs, actual expenses and attorney's fees incurred as the result of removal.

ARGUMENT

16

**A.     Standard of Review**

The standard of review on a motion to remand is de novo. <u>York v. Property & Cas. Ins. Co.</u>, 592 Fed. Appx. 148, HN1 (4th Cir. Nov. 12, 2014).  The Court of Appeals reviews a district court's Rule 12(b)(6) dismissal of a complaint de novo. <u>Partington v. Am. Int'l Specialty Lines Ins. Co.</u>, 443 F.3d 334, 338 (4th Cir. 2006).

**B.     There Is No Federal Question on the Face of the Pressls' Complaint.**

28 U.S.C. §1441(a) provides that a civil action brought in a state court may be removed to federal court if the action is one over which the federal courts have original jurisdiction.  Importantly, "[t]he burden of demonstrating jurisdiction resides with the party seeking removal." <u>Dixon v. Coburg Dairy, Inc.</u>, 369 F.3d 811, 816 (4th Cir. 2004).  Federal courts are "obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated. Therefore, if federal jurisdiction is doubtful, a remand to state court is necessary." <u>Id</u>.

A district court has federal question jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. §1331.  The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly

pleaded complaint." <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).  "For statutory purposes, a case can 'aris[e] under' federal law in two ways. Most directly, a case arises under federal law when federal law creates the cause of action asserted."  <u>Gunn v. Minton</u>, 133 S. Ct. 1059, 1064, 185 L. Ed. 3d 72 (2013).  Such claims account for the vast bulk of suits that arise under federal law.  <u>Id</u>.  In this case, federal law does not create a cause of action asserted in the Complaint.  Generally, the rights and obligations under the parties' contract are governed by state law.  <u>Volt Info. Scis., Inc. v. Bd. of Trs.</u>, 489 U.S. 468, 474, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); <u>Columbia Gas Transmission Corp. v. Drain</u>, 191 F.3d 552 (4th Cir. 1999)(vacating the order of the district court because the district court lacked jurisdiction and holding that the plaintiff's cause of action was a typical state action to enforce an easement).  In essence, the Complaint states a cause of action for interpretation of a flowage easement, a matter of private contract and state property law, and it seeks a declaration that the language of the flowage easement is not broad enough to give APCO the right to dictate to the Pressls how to or whether to construction a dock and plant vegetation on the property owned by them below the 800 feet contour line.  No federal question appears on the face of the Complaint.

**C.    The Pressls' State Law Claims Do Not Implicate Significant Federal Issues**.

Alternatively, state-law claims may "arise under" federal law if they "implicate significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005). These claims constitute a "special and small category" of federal "arising under" jurisdiction. Empire Healthchoice Assurance, Inc. v. McVeigh, 574 U.S. 677, 699, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006). More specifically, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Gunn v Minton, 133 S. Ct. 1059, 1065, 185 L. Ed. 2d 72 (2013).

Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit. Gully v. First Nat'l Bank, 299 U.S. 109, 115 (1936). Similarly, the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction. Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 813, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986). Instead, "[f]or federal jurisdiction to lie, federal law must provide the cause of action or the exclusive remedy, or the case must involve a substantial federal interest." Gibraltar, P.R., Inc. v. Otoki Group, Inc., 104 F.3d 616, 619 (4th Cir. 1997). As the Fourth Circuit has recognized, a plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when every legal theory

19

supporting the claim requires the resolution of a federal issue." Flying Pigs, LLC v. RRAJ Franchising, LLC, 757 F.3d 177, **14 (4th Cir. 2014). Further, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction. Grable, 545 U.S. at 314.

In this case, the interpretation of the scope of the flowage easement does not depend on the resolution of a substantial question of federal law. The removal in this case fails to satisfy all of the Gunn requirements. All of the Gunn requirements must be satisfied before the federal court can retain the case.

1. The Pressls' Complaint Does Not Necessarily Raise Issue of Federal Law.

The Pressls' Complaint does not "necessarily raise" an issue of federal law. As the Court of Appeals for the Fourth Circuit has recognized, "a plaintiff's right to relief for a given claim necessarily depends on a question of federal law when every legal theory supporting the claim requires resolution of a federal issue." Flying Pigs, LLC v. RRAJ Franchising, LLC, 757 F.3d 177, 182 (4th Cir. 2014). Therefore, if the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not "arise under" federal law for purposes of §1331. In this case, the Pressls could succeed in getting the state court to rule that the flowage easement is not broad enough to give APCO the

20

right to control the size and type of dock merely by examining the deed itself.   If the state court finds the language of the flowage easement unambiguous and clear, the state court's analysis will be limited to the four corners of the document and no extrinsic evidence in the form of FERC license would even be allowed.  <u>Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.</u>, 148 F.3d 396, 405 (4th Cir. 1998)(finding that Virginia strictly adheres to the "plain meaning" rule, entitling the parties to rely on the express terms of the written agreement, and that when the agreement is complete and clear on its face, the court is not at liberty to search for its meaning beyond the instrument itself).

Even if the state court had to consider what FERC requires of APCO under APCO's FERC license to maintain or operate the project, that consideration would not require interpretation of the FERC license but would merely be evidence of facts of what is required.  What the FERC license states is not disputed.  The state court would be interpreting the language of the flowage easement, not APCO's FERC license, and in doing so the state court would be applying Virginia common law.

### 2.   <u>APCO's FERC License Is Not Actually Disputed</u>.

Prong (2) of the <u>Gunn</u> analysis requires that the federal issue must be "actually disputed".   Even if the state court had to consider what FERC requires of APCO under its FERC license to maintain or operate the project, that consideration

would not require interpretation of the FERC license.  What FERC requires of

APCO is not disputed.  The dispute is over the extent of private property rights

which APCO purchased in order to be able to control the use of the Pressls'

property, a matter of state law.   Requirement (2) is therefore not satisfied.

3.  <u>The Pressls' State Law Claims Present No Substantial Federal Issue.</u>

<u>Gunn</u> also requires that the federal issue be substantial.   The exercise of

federal question jurisdiction in the absence of a federal cause of action is extremely

rare.  The Supreme Court has identified cases which would warrant a finding that

the state law claims present substantial federal issue.  Those cases present "nearly

pure issue of law" rather than cases which involve "fact-bound and situation-

specific" claims.  <u>Empire Healthchoice Assurance, Inc. v. McVeigh</u>, 574 U.S. 677,

699, 700-01, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006).  Pure questions of law

which would warrant this kind of jurisdiction would have to involve the

construction and validity of a federal statute or the U.S. Constitution.  <u>Grable &</u>

<u>Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 310, 315 125 S. Ct.

2363, 162 L. Ed. 2d 257 (2005)(federal question jurisdiction existed where the

meaning of a federal tax provision was at dispute); <u>City of Chicago v. Int'l Coll. of</u>

<u>Surgeons</u>, 522 U.S. 156, 160, 164, 118 S. Ct. 523, 139 L. Ed. 2d 525

(1997)(federal question jurisdiction existed where plaintiffs claimed that the city

ordinance was facially unconstitutional in violation of the Fifth and Fourteenth

Amendments).  In contrast, the Supreme Court has declined to exercise federal

question jurisdiction over state law claims if the federal issue is not a pure question

of law but is fact-bound and fact-specific. Empire Healthchoice Assurance, Inc. v.

McVeigh, 547 U.S. 677, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006)(reviewing a

reimbursement claim brought by an insurance carrier pursuant to a health care

contract authorized by the Federal Employees Health Benefits Act).

At most, the arguably federal issue in this case is an application of APCO's

FERC license to the language of the flowage easement.  This involves exactly the

type of fact-bound and fact-specific determination for which the Supreme Court

declines to exercise federal question jurisdiction.

Additionally, substantial does not mean large or significant.  All that APCO

asserted in the District Court was the national importance of the FPA.  As the court

in Dominion Pathology however held, just asserting a national importance of a

federal act does not make every issue touching on such federal act "an important

federal issue".  Dominion Pathology Labs., PC v. Anthem Health Plans of Va.,

Inc., 2015 U.S. Dist. LEXIS 8002, *12 (E.D. Va. June 19, 2015).  The Pressls'

flowage easement interpretation is not important to the federal system as a whole.

And FERC itself has expressly recognized that the resolution of private property

disputes between APCO and the landowners are appropriate for the state court in

the first place.  See FirstLight Hydro Generating Company, 142 FERC ¶ 62,256,

FN12 (2013) (stating that any disputes regarding property rights are matters for the state courts to resolve). If there is any federal issue implicated it is not an issue of interpretation of federal law but an issue of fact.

Based on all of the foregoing, the APCO's alleged necessity to incorporate APCO's FERC license into the Pressls' flowage easement and the Pressls' state law claims is insufficiently substantial to generate federal question jurisdiction.

4. <u>Exercise of Federal Question Jurisdiction over Pressls' State Law Claims Would Upset Federal-State Balance of Responsibility</u>.

This case violates prong (4) of the Gunn requirements that the case must be capable of being resolved in a federal court without upsetting the federal-state balance approved by Congress. Generally the rights and obligations under the parties' contract are governed by state law. <u>Volt Info. Scis., Inc. v. Bd. of Trs.</u>, 489 U.S. 468, 474, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). The entire regulatory scheme under the Federal Power Act, 16 U.S.C. §§791a et seq., relies on private property rights being acquired and retained by the licensee. FERC clearly interprets the Federal Power Act as not granting to the licensee any authority over private property beyond that which the licensee acquired and retained by private contract. <u>See</u> <u>City of Holyoke Gas and Electric Dept.</u>, 115 FERC ¶ 62,295 (2006)("Standard license article 5 requires licensees to retain title in fee to, or the right to use in perpetuity, project property sufficient to accomplish all project

purposes. This reflects the requirement that the licensee have sufficient control over project lands and works to enable [FERC], through the licensee, to carry out its regulatory responsibilities with respect to the project."); Alternative Energy Associates, 66 FERC ¶62,101 (1994)(stating that a licensee "must have adequate property rights to the project lands and works to carry out its responsibilities under the license."); Public Utility District No. 1 of Chelan County, Washington, 15 FERC ¶62,168 (1981)(acknowledging that "[t]o the extent that [a licensee] is unable to control shoreline activities and uses that adversely affect project resources, it is due to the [licensee's] failure to acquire adequate property interests for project purposes, as required by Article 5 [of its license]."); Tri-Dam v. Michael, 2014 U.S. Dist. LEXIS 42472, *9-10 (E.D. Cal. March 5, 2014)(holding that a FERC license does not create or confer property rights on the licensee).

FERC's interpretation of the Federal Power Act is entitled to considerable weight under the principles of Chevron U.S.A, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844-45, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984)("We have long recognized weight should be accorded to an executive department's construction of a statutory scheme it s entrusted to administer."). Furthermore, "[t]he legislative history of the Federal Power Act clearly establishes that Congress was determined not to infringe the traditional jurisdiction of the States in the areas

of property rights and tort liability." <u>DiLaura v. Power Authority of New York</u>, 786 F. Supp. 241 (W.D.N.Y. 1991).

Rather than granting or delegating to licensees the authority to regulate private property, the Federal Power Act expressly contemplates that a licensee will, when possible, acquire by contract or pledges the right to use or damage the lands or property of others necessary to construct and maintain a project. The Federal Power Act specifically provides:

> When any licensee cannot acquire ***by contract or pledges*** an unimproved dam site or the **right to use or damage the lands or property of others necessary to the construction, maintenance, or operation of any dam**, reservoir, diversion structure, or the works appurtenant or accessory thereto, in conjunction with an improvement which in the judgment of the commission is desirable and justified in the public interest for the purpose of improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce**, it may acquire the same by the exercise of the right of eminent domain** in the district court of the United States for the district in which such land or other property may be located, or in the State courts.

16 U.S.C. § 814 (emphasis added).

Additionally, Article 415 of APCO's license (formerly Article 41), as amended by APCO's Shoreline Management Plan, which is relied upon by APCO as a source of its authority to regulate the Pressls' dock construction, itself does not impose restrictions on the construction of docks by owners of vested private property rights. Rather, it merely regulates the conduct of APCO.

Article 415 clearly presumes that APCO has acquired the property rights

necessary for its permission to be required.  Indeed, Article 415 must be read in

conjunction with standard Article 5 of APCO's license, which provides:

> The Licensee, within five years from the date of issuance of the license, **shall acquire title in fee or the right to use in perpetuity all lands, other than lands of the United States, necessary or appropriate for the construction, maintenance, and operation of the project**. The Licensee or its successors and assigns shall, during the period of the license, retain the possession of all project property covered by the license as issued or as later amended, including the project area, the project works, and all franchises, easements, water rights, and rights of occupancy and use; and none of such properties shall be voluntarily sold, leased, transferred, abandoned, or otherwise disposed of without the prior written approval of the Commission, except that the Licensee may lease or otherwise dispose of interests in project lands or property without specific written approval of the Commission pursuant to the then current regulations of the Commission. (emphasis added).  Appalachian Power Company, 129 FERC ¶62,201, at *64603, 2009 FERC LEXIS 2427 (2009).

Article 415, under which APCO seeks to regulate the property in question,

presupposes that APCO has adequate private property rights not only to be able to

regulate in the first place but also to be able to undertake the necessary actions

against any non-complying uses which necessarily encompasses the right to enter

upon the property and remove any non-complying structures.  Id.  A FERC order

dated December 15, 2009, specifically stated that the issuance of the license to

APCO does not convey any property rights in either real or personal property, or

any exclusive privilege, nor does it authorize injury to private property or any

invasion of private property rights or any infringement of federal, state or local law

or regulation.  Appalachian Power Company, 129 FERC ¶62,201, at *64610, 2009

LEXIS 2427 (2009). The acquisition of private property rights is essential to being able to regulate what is being conducted on other person's land.  See also Tri-Dam v. Michael, 2014 U.S. Dist. LEXIS 42472, *9-10 (E.D. Cal. March 5, 2014).

By way of history, in 1998, Article 41 was added to APCO's license, at APCO's request, to "reduce some administrative burden on [APCO] and [FERC] by allowing [APCO] to permit relatively minor uses of project property."  Id.  Prior to 1998, all conveyances of property rights were governed by APCO's pre-1998 license, which did not contain Article 41.  According to FERC, Article 41 was intended to provide licensees with substantial additional authority to allow changes in the use of project lands and waters.  Union Electric d/b/a AmerenEU, 90 FERC ¶61,249, at *29 (2000).

In 2005, FERC amended APCO's license to read in relevant part as follows:

K. Property Rights

88. Some commentators raise the issue of the impact that the SMP will have on the property rights of owners of real estate abutting the waters of the reservoirs. They contend that Appalachian has been requiring that dock permits be recorded in the county clerk's offices and that they will become permanent encumbrances on the property. In his comments, Mr. George I. Vogel, II contends that Appalachian acquired the land and flowage easements to construct the Smith Mountain Lake in different manners. He states that, in some instances, it purchased land above and below the 800-foot contour line. In other instances, he asserts that it only purchased an easement to flood the land up to the 800-foot contour. He contends that under some easements, the property owners were left with easements to construct boat docks. Mr. Vogel concludes that

owners of property adjoining the lake have vested property rights below the 800 foot contour. He states that the permitting process requires property owners to sign a questionable document that will relinquish lakefront owners of their vested property rights. Mr. Vogel requests that the property rights be made an issue in the SMP and that a study be conducted to determine adjoining property owners' rights.

89. Standard license Article 5 requires the licensee to acquire and retain all interests in non-federal lands and other property necessary or appropriate to carry out project purposes. The licensee may obtain these property interests by contract or, if necessary, by means of federal eminent domain pursuant to FPA section 21. A licensee's property interests can range from fee simple to perpetual or renewable leases, easements, and rights-of-way. **If there is a question concerning specific property rights, it will have to be resolved between the property owner and Appalachian in a property law action in a court of appropriate jurisdiction.** Appalachian Power Company, 112 FERC ¶61,026, 2005 FERC LEXIS 1861, *60-63 (2005).

APCO's ability to control shoreline activities is premised on its acquisition and retention of adequate private property rights. See Public Utility District No. 1 of Chelan County, Washington, 15 FERC ¶ 62,168 (1981) ("[t]o the extent that [a licensee] is unable to control shoreline activities and uses that adversely affect project resources, it is due to the [licensee's] failure to acquire adequate property interests for project purposes, as required by Article 5 [of its license]."). FERC clearly explains that in order for the licensee to be able to regulate the Project, the Commission requires the licensee to acquire and retain all necessary ownership of

or rights to project property through standard Article 5 of each license. See Union Electric Co. d/b/a AmerenEU, 90 FERC ¶61,249 (2000).

In Union Electric, FERC held that in order to be able to regulate the project, the licensee must acquire title in fee or the right to use in perpetuity all lands necessary and appropriate and "furthermore, the licensee or its successors and assigns must retain possession of all project property covered by the license as issued or as later amended, including the project area, the project works, and all franchises, easements, water rights, and right of occupancy and use." Union Electric Co. d/b/a AmerenEU, 90 FERC ¶61,249, n14 (2000)(emphasis added).

Thus, it cannot be said that Congress has specifically conferred jurisdiction upon federal court to resolve questions of private contract and interpretation of a deed. The FERC license is a document which governs the conduct of its licensee, APCO. APCO's duty to comply with its federal license does not provide a sufficient basis to invoke federal jurisdiction. Jeffrey Lake Dev. Cent. Neb. Pub. Power & Irrigation Dist., 2011 U.S. Dist. LEXIS 152634, at *9-10 (D. Neb. Nov. 23, 2011) (citing Central Iowa Power Coop. v. Midwest Independent Transmission System Operation, Inc., 561 F.3d 904, 919 (8th Cir. 2009)). It is up to APCO to acquire the necessary or appropriate private property rights to carry out the project purposes. Whether APCO has acquired the necessary or appropriate property

rights to carry out the project purposes is a matter of state law to be determined in state court litigation applying state common law, not federal law.

**D.    There Is No Coercive Suit Reverse to the Pressls' Complaint that APCO Could Bring which Would Contain Federal Question on Its Face.**

The well-pleaded complaint rule operates no differently when the jurisdictional issue is whether a district court possesses subject matter jurisdiction over a declaratory judgment action.  Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, **9-10 (4th Cir. 2001).  In a declaratory judgment action, however, the federal right litigated may belong to the declaratory judgment defendant rather than the declaratory judgment plaintiff.  Id.  The question is whether the complaint alleges a claim arising under federal law that the declaratory defendant could affirmatively bring against the declaratory judgment plaintiff.   In this case, APCO cannot establish any duty on the part of the Pressls to follow FERC requirements.  Only APCO, as a FERC licensee, is subject to FERC control.  To the extent that FERC requires APCO to regulate shoreline activities, APCO must establish that the flowage easement is a broad enough property right for APCO to have the right to regulate the size and type of dock the Pressls may build or vegetation they may plant.

Since the underlying property rights are in dispute, the reverse of the declaratory judgment must likewise turn on resolution of private property rights, a

matter of state law, not a matter of federal law.  The District Court therefore did not apply the "coercive suit" doctrine correctly.

If the District Court did apply the "coercive suit" doctrine correctly, the reverse of the APCO's suit would be APCO's declaratory judgment action seeking declaration that APCO has sufficient state law property rights and thus that the flowage easement is broad enough for APCO to control the use of the Pressls' land.  A plaintiff/defendant seeking to invoke federal jurisdiction in a declaratory judgment action must independently meet the federal jurisdiction requirements. The Declaratory Judgment Act, 28 U.S.C. §2201, does not confer jurisdiction upon federal courts and APCO cannot rely on it as means to obtain jurisdiction. Household Bank, F.S.B. v. Allen, 2001 U.S. Dist. LEXIS 8799, *18 (S.D. Miss. May 25, 2001).  In determining whether federal jurisdiction arises in the hypothetical "coercive suit" the court must determine what would be the suit's underlying cause of action.  Could the instant case, absent the availability of declaratory relief, nonetheless be brought in federal court?  In this case, the underlying cause of action is a matter of state real estate and contract law.  The Pressls and/or APCO simply asserting and seeking interpretation of their property rights cannot bootstrap federal jurisdiction.   FERC is not a party to the flowage easement.  The flowage easement originated in Virginia, is affecting Virginia residents and derives its force from Virginia state law. Nowhere does the Federal

Power Act grant any authority to licensees to regulate private property. Indeed, "[t]he legislative history of the Federal Power Act clearly establishes that Congress was determined not to infringe the traditional jurisdiction of the States in the areas of property rights and tort liability." DiLaura v. Power Authority of New York, 786 F. Supp. 241 (W.D.N.Y. 1991).  The concept of leaving property rights issues to the states has been preserved by the FPA and upheld in case law and by FERC.

In the District Court, APCO asserted that the hypothetical suit that APCO could bring to bootstrap federal jurisdiction was a suit seeking injunction. However, the reverse of the Pressls' declaratory judgment suit cannot be a hypothetical suit seeking injunction.  The Pressls have not built a dock yet.  APCO also asserted that the hypothetical suit that APCO could bring would be a coercive suit pursuant to 16 U.S.C. §825p to enforce its duties and responsibilities under the FPA.  That is also not the reverse of the Pressls' suit.  16 U.S.C. §825p provides for federal jurisdiction over suits to enforce any liability or duty created by the FPA or other regulation.  16 U.S.C. §825p speaks of the duties and liabilities of the licensees' such as APCO.   What specific duty or liability does the FPA or other regulation thereunder create for the Pressls?   Even if there was any duty on the part of Pressls which APCO has not shown, APCO would first have to establish sufficient property rights to regulate the Pressls.  The FPA does not confer upon APCO the right to enter, use, or regulate private property without the consent of

the owner.   If APCO has any "rights" to enforce, it would be APCO's rights under

the flowage easement, which is a matter of state law.

In this manner, this case is similar to the appeal in Columbia Gas

Transmission, LLC v. Singh where the Sixth Circuit reversed the judgment of the

district court for lack of jurisdiction.   Columbia Gas Transmission, LLC v. Singh,

707 F.3d 583, 591 (6th Cir. 2013).  In Singh, Singh questioned existence of the

easement and said that he did not have to ask Columbia's permission to develop

his property.  Singh, 707 F.3d at 586.   Columbia alleged federal jurisdiction under

the Natural Gas Act, 15 U.S.C.S. §717u, which is parallel to §825p.  Singh, 707

F.3d at 591-92.  The Sixth Circuit found that §717u did not apply in the case

because the dispute was over the easement, and even if a general private right

existed under the Act, Columbia has not alleged that the Singhs have violated the

Act or that the Singhs have any statutory duty under the Act.   Id.   The Sixth

Circuit found that if the Singhs had a duty to Columbia, if any, it would arise from

the easement, not from the Natural Gas Act.  Id.   Therefore, the Sixth Circuit

held, neither the Natural Gals Act nor federal common law is the source of

Columbia's cause of action and Columbia's cause of action can only be understood

as asserting a state-law claim for interference with easement.   Singh, 707 F.3d at

588-89, 591-92 (citing Pan American Petroleum Corp. v. Superior Court of

Delaware for New Castle County, 366 U.S. 656 (1961) where the Supreme Court

clarified that §717u does not create jurisdiction beyond federal "arising under" jurisdiction and that exclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction because of which state courts are excluded).

Therefore, based on all of the foregoing, APCO's hypothetical "coercive action" cannot be a basis of federal jurisdiction.

**E.     APCO's Hypothetical Coercive Suit Does Not Implicate Significant Federal Issue as It Fails to Satisfy the Four Prongs of the <u>Dunn</u> Analysis.**

The reverse of the APCO's Complaint would be APCO's declaratory judgment action seeking a declaration that APCO has sufficient property rights and thus that the flowage easement is broad enough for APCO to control the use of the Pressls' land below 800 feet contour line.  Not only that there is no federal question on the face of the hypothetical "coercive suit", APCO's hypothetical "coercive suit" also does not implicate a significant federal issue and fails to satisfy the four prong <u>Gunn</u> analysis for this case to remain in federal court.   The exercise of federal jurisdiction over state law claims demands "not only a contested federal issue, but a substantial one. "   <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. at 313.  Consistent with this objective, it is not enough that the federal issue be significant to the particular parties in the immediate suit but to the federal system as a whole.  <u>Gunn v. Minton</u>, 133 S. Ct. at 1066.   Federal jurisdiction over a state law claim will lie only if a federal issue is: (1) necessarily

raised, (2) actually disputed, (3) substantial <u>and</u> (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. <u>Gunn v. Minton</u>, 133 S. Ct. 1059, 1065, 185 L. Ed. 3d 72 (2013).  This type of jurisdiction is very rare.

The reverse of the Pressls' suit does not "necessarily raise" an issue of federal law.  As the Court of Appeals for the Fourth Circuit has recognized, "a plaintiff's right to relief for a given claim necessarily depends on a question of federal law when <u>every</u> legal theory supporting the claim requires resolution of a federal issue."  <u>Flying Pigs, LLC v. RRAJ Franchising, LLC</u>, 757 F.3d 177, 182 (4th Cir. 2014).  Therefore, if the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not "arise under" federal law for purposes of §1331.  In this case, if the state court finds the language of the flowage easement unambiguous and clear, the state court's analysis will be limited to the four corners of the document and no extrinsic evidence in the form of the FERC license would be allowed.  And that is exactly what the District Court did in this case when it ruled that the flowage easement was broad enough to require the Pressls to obtain a permit for the construction of a dock.  The District Court has interpreted the flowage easement without looking to the APCO's FERC license which undercuts APCO's argument and the District Court's ruling that this case implicates a substantial question of federal law and

36

that the federal question appears on the face of the Pressls' Complaint or APCO's hypothetical coercive suit reverse to the Pressls' Complaint.  JA 496-97.

APCO's FERC license is the only federal element on which APCO's entire federal jurisdiction argument hinged.  The District Court's ruling interpreting the flowage easement as broad enough turns on a single sentence and reasoning that because the flowage easement grants APCO the right of removal of structures, such as docks, it logically would hold that it also provides APCO with the ability to determine the necessary steps that a party must take to build a dock to begin with.  JA 497.   No question of federal law or the need to interpret federal law has been implicated in this analysis.   Yet, the District Court ruled that federal question jurisdiction was present for the court to retain this case.

Even if the state court had to consider what FERC requires of APCO under APCO's FERC license to maintain or operate the project, that consideration would not require interpretation of the FERC license but would merely be evidence of facts of what is required.  And those facts would then be applied by the state court as it interpreted the flowage easement, not the FERC license.  An issue of federal law is thus not "necessarily raised".

In the District Court, APCO argued that the flowage easement could not be interpreted without looking at APCO's FERC license because the flowage easement gives APCO the right to affect the servient property in connection with

maintenance and operation of the project.  So according to APCO, the state court having to look at the APCO's FERC license brought in sufficiently substantial federal element which was in dispute.  This argument however fails.  Unlike in Grable (where the parties argued for competing interpretations of a federal statute) or in Gunn (where one party argued that a patent law exception applies to his lease and the other party argued that it did not), no party here disputes the existence, validity, or construction of the APCO's FERC license.  Grable-Dunn jurisdiction can be exercised only over state law claims that turn on the construction of a federal statute or Constitution.  The language of APCO's FERC license, the arguable federal issue, is not disputed.  The second requirement of Dunn that the federal issue must be actually disputed therefore cannot be satisfied to warrant federal jurisdiction.

The argument that APCO's FERC license must be incorporated into a state law claim to determine the scope of the rights conveyed under the flowage easement is insufficiently substantial to generate federal question jurisdiction and to satisfy the third Gunn requirement. Because this is not a case where the state court would be called upon to construe or decide on the validity of APCO's FERC license the case falls within the category of cases where the Supreme Court has repeatedly admonished that federal courts should not exercise federal question jurisdiction over state law claims if the federal question is not a pure question of

law, but is fact-bound and situation-specific.  Gunn, 133 S.Ct. at 1068 (holding that

such fact-bound and situation-specific effects are not sufficient to establish federal

arising under jurisdiction); Empire Healthchoice Assurance, Inc. v. McVeigh, 547

U.S. 677, 126 S. Ct. 2121, 165 L.E.2d 131 (2006).

At most, the arguably federal issue in this case is a question of application of

APCO's FERC license to the language of the flowage easement.   The flowage

easement states that APCO acquired an easement to overflow and/or affect so

much of said premises [below 800 feet contour line] as may be overflowed and/or

affected, continuously or from time to time in any manner whatsoever, as the result

of the construction, existence, operation and/or maintenance of the aforesaid dam

and/or power station, the impounding of said river and tributaries and/or varying of

the level of the so impounded waters by reason of the operation of said power

station, including any pumping as part of such operation.   This is exactly the type

of the fact-bound and situation-specific question that the Supreme Court has

repeatedly held does not give rise to this rare type of federal jurisdiction.

Therefore, APCO's FERC license does not transform this case into one arising

under federal law.

Finally, this case violates the last requirement of Gunn that the case must be

capable of being resolved in a federal court without upsetting the federal-state

balance approved by Congress.  In this case, there is nothing in the FPA to suggest

that Congress intended for state law causes of action, like interpretation of private

contracts between property owners and licensees, to be litigated in federal courts.

On the contrary, FERC itself interprets the FPA as leaving to the state courts the

issue of resolution of private property rights. <u>See</u> discussion in Part C (4).

**F.    The District Court Was Without Jurisdiction to Rule on the Motion to Dismiss.**

The District Court was without jurisdiction to rule on Motion to Dismiss.

<u>See</u> Parts A, B, C, D, E.

**G.    The District Court Erred in Granting the Motion to Dismiss**.

The Court of Appeals reviews a district court's Rule 12(b)(6) dismissal of a

complaint de novo. <u>Partington v. Am. Int'l Specialty Lines Ins. Co.</u>, 443 F.3d 334,

338 (4th Cir. 2006).

Under Fed. R. Civ. P. 12(b)(6), the District Court should dismiss a

complaint for failure to state a claim if "it appears that the plaintiff[] would not be

entitled to relief under any facts which could be proved in support of [her] claim."

<u>Estate Const. Co. v. Miller & Smith Holding Co.</u>, 14 F.3d 213, 218 (4th Cir. 1994).

In considering a motion to dismiss, a court must accept as true all well-pleaded

allegations in the complaint in the light most favorable to the plaintiff while

drawing all reasonable factual inferences from those facts in the plaintiff's favor.

<u>See</u> <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999); <u>Mylan</u>

Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989).

The District Court erred in granting APCO's Motion to Dismiss on the ground that the Pressls failed to exhaust administrative remedies under FERC. The District Court found that the FPA established series of remedies for those who wish to challenge a FERC decision or action. JA 498. According to the District Court, if a person aggrieved by a final FERC decision or order is not satisfied, he can file for a rehearing and after that, after FERC's final decision and unsuccessful rehearing, a person can seek judicial review of a FERC action. JA 498-99. In this case however the Pressls have not applied to FERC (or to APCO) for a permit to construct their dock because it is the Pressls' position that under the flowage easement, they do not have to. The Pressls challenge the need to obtain an APCO permit and FERC approval. FERC itself states that when it comes to disputes over property rights those need to be resolved in state courts. So there would be no reason to seek interpretation of the flowage easement from FERC as FERC acknowledges it has no jurisdiction to decide the property disputes among APCO and the landowners. See FirstLight Hydro Generating Company, 142 FERC ¶

62,256, FN12 (2014) (stating that any disputes regarding property rights are matters for the state courts to resolve).

How could the Pressls then be said to have failed to exhaust their administrative remedies?  It was not until October 6, 2015, after the present suit was filed, that the District Court erroneously decided the issue of state property law that arguably gave rise to the necessity for the Pressls to even seek a dock permit from APCO.

In any event, the interpretation of the flowage easement was supposed to have been determined by the state court as the entire Complaint should have been remanded.   In the alternative, at least the part of the decision dealing with the interpretation of the easement should have been severed and remanded.  See 28 U.S.C.S. §1441 (c)(2); see also Moore v. Svehlak, 2013 U.S. Dist. LEXIS 97329, *23 (D. Md. July 11, 2013)(holding that §1441(c)(2) requires the court to sever and remand the claims over which the court lacks jurisdiction).

Furthermore, the easement must be construed from the words in the deed and the deed merely states that APCO can flood and remove structures that impact its ability to flood Pressls' property or impact APCO's ability to maintain and operate dam and power station.  The flowage easement does not say that the landowner must apply for a permit to construct the dock; or that the landowner has to sign a permit agreement as drafted by APCO and attached to the Pressls'

42

Complaint as Exhibit G which involves several pages of additional duties to be imposed on the landowner and agreement by the landowner to give up additional property rights beyond the flowage easement on record; or that the landowner must plant various vegetation on this property and stabilize its shoreline, all as directed by APCO and FERC.  JA 49-55.  On the contrary, the flowage easement just states that APCO can remove vegetation or structures on the property below 800 feet contour line.  The Court is not at liberty to rewrite the parties' contracts and add words for the parties that the parties did not use themselves.  Am. Std. Homes Corp. v. Reinecke, 245 Va. 113, 425 S.E.2d 515 (1993). In this case, the court would be not just adding one word, it would be adding pages and pages of requirements and affirmative duties that APCO is seeking to force upon the Pressls.

The landowners have an express and reserved right in the flowage easement to use their property for recreational purposes.  The plain language of the flowage easement does not give APCO the right to require the Pressls to enter a revocable license as a condition of accessing the waters of Smith Mountain Lake.   The plain meaning of the flowage easement does not contain an obligation upon the landowner to comply with all the obligations and duties which APCO by way of the permit seeks to impose upon the Pressls, including but not limited to a

requirement to expend their own monies to cultivate the land and stabilize the

shoreline in the manner that APCO would like them to.

Under Virginia law, no use can be made of an easement different from that

established when the easement was created, which imposes additional burdens on

the servient estate.  Shooting Point, L.L.C. v. Wescoat, 265 Va. 256, 266; 576

S.E.2d 497, 503 (2003); see also McCarthy Holdings, LLC v. Burgher, 282 Va.

267, 273; 716 S.E.2d 461, 465 (2011)(holding that an easement can be conveyed

without limitations on use by the dominant estate and remain easement limited to

the use established when the easement was created).  At the time this flowage

easement was executed, APCO had no obligation from FERC to control uses and

occupancies in the Project and APCO did not do so until after 1998 amendment

adding Article 41 which delegated to APCO the authority to grant permission for

certain uses which protect and enhance the scenic, recreational, and other

environmental values of the Project.  There were many docks in existence prior to

the addition of Article 41 and prior to the implementation of Shoreline

Management Plan without any APCO permit.  In 1960, when the flowage

easement was executed, neither APCO nor the Thompsons thus understood or

contemplated that there would be any need for permitting process which would

place additional duties upon the landowners, including the need to vegetate

property pursuant to APCO's requirements if they wanted to have a dock.  The

right to use the lake for recreational purposes was expressly preserved in the

easement.  The recreational uses of Smith Mountain Lake include having a dock.

Thus, under Virginia law, APCO cannot use the 1960 flowage easement to impose

additional burdens on the Pressls and must either purchase additional property

rights from the landowners or obtain them by way of eminent domain.   Just as the

FPA and FERC contemplate.

<u>CONCLUSION</u>

For the reasons set forth above, both the District Court's rulings (denying

Motion to Remand and granting Motion to Dismiss) must be vacated with the order

for the District Court to remand the case to Franklin County Circuit Court.

Respectfully submitted,

/s/ Pavlina B. Dirom

_____
James Frederick Watson, Esquire
VSB No. 40322
Pavlina B. Dirom, Esquire
VSB No. 66573
CASKIE & FROST, P.C.
2306 Atherholt Road
P. O. Box 6320
Lynchburg, Virginia 24505
(434) 846-2731
(434) 845-1191 (facsimile)
*Counsel for Appellant*

<u>Statement Regarding Oral Argument</u>

The appeal presents significant issues concerning interpretation of federal license and private property rights.

Accordingly, pursuant to F.R.A.P. 34(a), Appellant hereby requests oral argument.

<u>Certificate of Compliance</u>

The Brief of Appellant has been prepared using:

     Microsoft Word;

     Times New Roman;

     14 Point Type Face Space.

     EXCLUSIVE of the Table of Contents, Table of Authorities, the Statement

Regarding Oral Argument, the Certificate of Filing and Service, and this

Certificate of Compliance, this Brief contains 9,292 words.


     I understand that a material misrepresentation can result in the Court's

striking the brief and imposing sanctions.  If the Court so directs, I will provide an

electronic version of the Brief and/or a copy of the work or line print-out.

/s/ Pavlina B. Dirom
_____
James Frederick Watson, Esquire
VSB No. 40322
Pavlina B. Dirom, Esquire
VSB No. 66573
CASKIE & FROST, P.C.
2306 Atherholt Road
P. O. Box 6320
Lynchburg, Virginia 24505
(434) 846-2731
(434) 845-1191 (facsimile)
*Counsel for Appellants*

Certificate of Service

I hereby certify that on December 18, 2015, the foregoing Brief of Appellants and Joint Appendix was served on all parties or their counsel of record through the CM/ECF:

> Matthew P. Pritts, Esquire
> C. Carter Lee, Esquire
> Frank Friedman, Esquire
> Woods Rogers, PLC
> 10 South Jefferson St., Ste. 1400
> Roanoke, VA 24011
> Counsel for Appellee

I hereby certify that a paper copy of the foregoing Brief of Appellants and Joint Appendix was delivered to the Clerk's Office on December 21, 2015.

/s/ Pavlina B. Dirom
_____
James Frederick Watson, Esquire
VSB No. 40322
Pavlina B. Dirom, Esquire
VSB No. 66573
CASKIE & FROST, P.C.
2306 Atherholt Road
P. O. Box 6320
Lynchburg, Virginia 24505
(434) 846-2731
(434) 845-1191 (facsimile)
*Counsel for Appellants*